Good morning. I may have pleased the court. I would like to reserve three minutes for rebuttal time. This case exemplifies the type of board action that this court rejected at the time of the hearing. With respect to the main appeal, the primary issue with respect to the independent claims is that the petitioner's original theory is that Bannisher, the primary reference, described a recording sheet, which the petitioner's declarant said was some sort of data structure or algorithm that input surface structure. The problem is the recording sheet was a mistranslation of the original German reference. The correct translation is recording bow. It is undisputed that the translation was incorrect. It is also undisputed that the correct translation, recording bow, is an instrument that cannot measure visible surface structures or any measures joint information, namely articulation or spatial relationships, not the actual surface structures of the jaw. That is also undisputed. Once that theory was put aside and what was relied upon in the original petition was found not to be able to perform the actual function of the claim, namely making a three-dimensional optical measurement of the visible surface structures of the jaw and teeth, then the actual ground fails. The petitioner has not met its burden. But that's not true. In other cases like in reinvasive, we have held that as long as the patentee has noticed, you can look at other portions of the same reference to find the same disclosure, even if the petition may have gotten the location of the disclosure wrong or written it too narrowly in the petition, so long as there's notice to the patentee. Are you suggesting you weren't on notice? That's correct, Your Honor. We were not on notice for several reasons. First of all, what was relied upon was a recording bow. That cannot perform the structure. The petitioner's own declarant was asked during the deposition what he was relying upon, and he said he was relying on a recording sheet and stated, the recording sheet would- Yes, he said that, but then I guess Banisher's other disclosure is a 3D model geometry of the jaw input into a computer, right? Correct, Your Honor. We do not dispute that. The issue here is what the 3D model geometry is. Now, that's not a very good translation. It's kind of awkward, but what the 3D model geometry is, a model of the jaw. Specifically, it says it's a model of the jaw region. The model of the jaw region is used by the articulator and the recording bow to measure movement. It is not geometry data. The actual three-dimensional model geometry described in Banisher is described as being swiveled, as being arranged, as being mounted. That is not data. That is an actual thing. I don't know. At column 8, lines 23 to 29 of the patent, the plaster models are formed from impressions of the teeth and jaw, and thus, are measurements of, and I'm quoting from that section, the visible surface of the jaw and the teeth. Why isn't that good enough, or at least substantial evidence for the fact finding? I'm sorry. You're at column 8 at- 23 to 29. There is an impression that's taken. That's always done in the prior art. When you make one of these models, you take an impression of the teeth. Yes, but how can I conclude that's not substantial evidence for the board fact finding that these are measurements of the visible surfaces of the jaw and teeth? Because it's an impression. It is a physical impression. Then, if you read down further, it describes how it's being input and what's being input. It is being input using a recording though simply cannot input surface structures. Furthermore, if we look at Banisher as a whole as to what it's teaching, not just that section, Banisher makes clear that its invention is directed to this very idea of inputting articulation data. Specifically, Banisher states when it discusses the method according to the invention, movements of the jaw joint that are known but could not hitherto be simulated, namely articulation movements, can be made visible in three dimensions. What Banisher describes as a whole is inputting articulation information. There is a model created and we can see on pages 18 and 19 of our brief what these articulators and recording both look like. There's nothing in those devices that can measure surface structures. Yes, there is an impression. Yes, there is a model made, but the question is then what is input from that model? The only thing Banisher describes as its invention is inputting articulation information. The only instrument it describes for inputting is a recording boat, which can only input articulation information. I don't understand. It describes inputting the three-dimensional plaster models into the computer. I don't think that's just the articulation data. Well, it states later what is how that's done. Even by the way, whether I think it or not is irrelevant because it's a substantial evidence question for the board. If the board found that it did, I don't see how column 8, line 36 to 39, column 8, line 23 to 29, don't support that fact-finding, whether I agree with it or not is irrelevant. Well, Your Honor, I'd point you again to that same section. It says the plaster models thus are transferred from the patient's head into a three-dimensional relationship into a skull-based simulator using a recording sheet. So the instrument they're describing for inputting the model, it's a model of movement. It's a model that measures movement and it is certainly being input, but the question is what data is being input? You can think about this as a movement model as if you were to watch a sporting event where you have a golf ball or a football or a baseball and they show the path of movement. There's that little yellow trail behind the ball. That shows information concerning the ball, but it's the trajectory of the ball, not the surface structure. What about the sentence that bridges columns 8 and 9 in the reference that talks about the supporting zones to be replaced are marked by static measuring points or occlusion reliefs of the teeth? Certainly. First of all, that wasn't addressed by the petitioner's declaring. Moreover, when the petitioner's declaring was asked about that, he specifically said that the supporting zones to be replaced refer to marking done with radio-opaque markers and that the supporting zones are for supporting the implant indicating the available vertical bone supply. What is important about that sentence is it just talks about the supporting zones to be replaced, meaning things to be replaced. Now, the petitioner's declarant took the position that that means the bone structure. Our declarant took the position that in a recording bow, what you're measuring and what you're trying to do is put in a replacement tooth, a restoration. When you do that, you actually have to make a new restoration or false tooth and you do have information concerning the replacement tooth, but that is not a visible surface structure measurement of the actual teeth in the patient. That is a measurement of the tooth to be replaced. What you just described, though, sounded like it was here's what one expert said, here's what another expert said, so why would it be unreasonable for a fact finder to rely on the first expert's declaration? Certainly, and maybe I need to be a little bit more clear. Neither declarant took the interpretation that the board took. The petitioner's declarant took the position that that sentence, which says supporting zones to be replaced, was referring to the underlying bone structure. Underlying bone structure is not a measurement of visible surface structures. If we take that petitioner view, then the supporting zones to be replaced are underlying bone structure, and according to his statement, they would be marked with radio opaque markers. That's in the appendix at 1788 and 1789. I'm sorry, please finish. Under one declarant's theory, this is measuring underlying bone structure, not a visible surface structure measurement. Under the other declarant's testimony, it would be the tooth to be replaced. That is in the record, excuse me, at 1491 paragraph 141. What the board did is take a new theory that this must be a measurement of the other teeth, not the replacement tooth and not of the bone, putting aside both the petitioner's declarant's testimony and our declarant's testimony. That is not based on the substantial evidence from either of the parties. That is a completely new theory, and one of which we had no notice of prior to the final written decision. That's perfect because that's where I wanted to segue. You say you had no notice of it, but the petition itself actually expressly cites column 8, slide 36 to 39 as supplying this element, and that is unequivocally the input of the 3D model of the jaw. Whether substantial evidence supports an understanding of what that model is or not is a different question from whether you had notice of it. This petition expressly pointed to that exact disclosure in the specification. Why weren't you on notice? For two reasons, Your Honor. First of all, they described that the way that that is input is using a recording sheet. Their mistake was they believed the model was being input. We don't disagree that model information was being input. The question is what information? The instrument they relied on is one that cannot measure surface structure. We asked the petitioner's declarant during his deposition what he was relying on. He said it's the recording sheet, and he believed that was an algorithm. That turned out to be wrong. We asked him what his theory was. He told it was this recording sheet. We proved that the recording sheet can't possibly do what he says it's doing. Therefore, despite citing to that section, the actual instrument they're relying on for what information is being input was incorrect. It's not a question of whether or not information is input and whether or not information from the model is input. The question is what the information was. We proved that the information was articulation, not surface structure, based on the actual testimony in the petitioner's declarant and his own testimony during deposition. Therefore, we relied on what the petitioner's declarant told us. That turned out to be false. We proved that it was false. There's no dispute that it's false. Now in the final written decision, there is a new theory that, and I'll point out, the new theory is, and I quote, patent owner's argument concerning banisher's use of a recording bow to record articulation movements of a patient's jaw is not relevant to our analysis. But what the petitioner's own declarant and the petitioner argued as far as the basis for unpatentability must always be relevant to the analysis. We established why that analysis was incorrect and what they believed was being input was incorrect. That should end the inquiry, but it didn't. I guess the one problem I'm having is with your notice argument. So I understood the board to say, even if the recording bow inputs only articulation data, even if that's correct and that that portion of the patent, the challenger, the petitioner's challenge is incorrect, they then found that nonetheless, the portion of banisher, which inputs the three-dimensional plaster model into the computer, nonetheless supplies the element. They expressly cited column eight, line 36 through 39. That exact citation is in the petitioner's petition. Now they may have, they pointed the board to the exact sentence the board says discloses it. They may have misunderstood how it operated, but the board as a factual matter found it nonetheless disclosed the element. I'm having trouble concluding why you haven't had APA notice, given that it's the exact same sentence in the petition that they pointed to. They may have made some mistakes in articulating how it operated, but the board found, regardless of the mistakes they made, it nonetheless supplies the missing element. Certainly, Your Honor. I think the issue here is not what was being cited to. You can cite to anything in a reference. The question is... This is a single sentence. Oh, I know it's... Well, it's also referring to the recording sheet and how it's input. The question is how that sentence is interpreted. And the interpretation that we were looking at is the interpretation that they put forward as far as what is being input and how it's being input. And the interpretation of that citation is what we proved was incorrect. Now that there's a new interpretation of regardless of the actual instrument that's described in this section, not being able to perform the function, we believe the function is still being performed. And the question is, what analysis has been offered by the petitioner that that function is being performed when the very thing they relied on cannot perform the function? I don't disagree that the citation was made, but it's the analysis of the citation that the citation that we did not have notice of. You're into rebuttal, so why don't we hear from the other side? Thank you, Your Honor. Good morning, Your Honor. May it please the court. Substantial evidence supports the decision of the board that at least claims won through wage are unpatentable on the basis of banisher. I'd instead like to turn you, though, to the substitute claims. I was surprised when your 28-J letter bringing aqua products to the court's attention suggested that there was no need to vacate and remand here, despite the fact that the board has clearly put the burden on the wrong party. So I'd like you to explain to me why it is so that we should not vacate and remand, as we've done in every other case where the board has articulated the burden wrong, why this case should be treated as an exception post-aqua products. If I may, Your Honor, I would like to at least give that a try. In aqua products, the court left open the question of whether the board may on its own, sua sponte, raise patentability challenges to substitute claims. That question was left open. We submit that there are very good reasons that the board ought to be permitted to review the patentability of such claims when they haven't been. But that's a separate question. There's two questions, right? The first question is, who has the burden? The second question is, is the board permitted to go beyond the grounds articulated by the petitioner and combine references that were definitely part of the IPR record in whole, but in a manner that wasn't? That's the question left open in aqua products. Completely agree with you. But that's different from my question to you, which is the board put the burden of proving all of this on the wrong person and in multiple places expressed that and said the patentee didn't meet its burden of proving patentability. Why isn't that a straightforward vacate and remand? The board did as your honor suggests. It placed the burden on the patent owner, but it then went beyond the burdens in finding the very specific facts that rendered substitute claim 11 unpatentable. We are. The analysis, the entire analysis is at 48 through 55, where the board on its own concludes that the subject matter of substitute claim 11 is obvious based on the combination of facts that it was the patent owner's burden, because that was the law at the time. For example, at page 54, the board finds that certain facts are inequal poise, that the patent owner is arguing one contention and the petitioner another. The board also identified that it was placing the burden on the patent owner. But in the end, the board did its own independent review of the record to make its conclusion that based on the prior art before it. However, we didn't know that, where every page that's interspersed here is the board shouting out that the patent owner is not satisfied his burden. They did that twice on page 54, which is sort of the summary of what's going on with these amended claims. They did it in the context of the burden being on the patent owner, but once the facts were ultimately found, the facts had been established that substitute claim 11 was unpatentable. Where is that? For example, that is at page 55. We determined that the combination of banisher and troop in view of Klein and Poirier would have rendered the subject matter of substitute claim 11 obvious to a POSA at the time the invention was made. Yeah, that's in the conclusion. The analysis all is replete with references to the fact that we've analyzed the evidence under the rubric of the patent owner having the burden and the patent owner is not satisfied. Without question, the analysis was done with the burden of proof being placed on the patent owner. One additional question I have for you, it's almost independent of who had the burden. One other problem, and it is raised in the rubric at page 59, spanning 59 to 60, is I am not suggesting that the board does not have the authority to pick and choose references that are generally in the IPR to bring them together in the first instance, the board, and conclude that they result in obviousness. What we have consistently held is every time the board chooses to move beyond the arguments the petitioner made, notice has to be given to the patentee an opportunity to respond. Here, let me make sure I have the facts right. With regard to the amended claims, claims 11 through 18, you argued Mouchabac, Poirier, Willer, and Klein taken together amounted to 103. You also argued separately Mouchabac, Swalins, and Klein would be a 103 rejection for the amended claims. Nowhere in your opposition to the amended claims did you ever even mention Vanisher or Truth. They had absolutely been mentioned in your petition with regard to the original claims. Just to be clear, I don't misapprehend that, but you never cited them as references that ought to be considered by the board in combination with other references to render the amended claims unpatentable. Is that correct? That is correct, Your Honor. The board, the first time the patentee had any idea that these particular amended claims might be subject to a rejection based on the combination of Vanisher, Truth, and Poirier, and Klein was when the board rendered a decision rejecting them on the basis of that particular combination of references. That's correct, Your Honor. We have a notice problem. In addition, I'm not saying the board doesn't have the authority to do what it did, i.e., all these references were of record. To some extent, the patentee knew they were all in play in the IPR generally, but they clearly never knew that these four were being argued by you all or considered by the board in this particular combination for these particular claims. I feel like even if they put the burden on the right person, we still have a notice problem because all of our cases have said patentees have an opportunity to have notice and respond to the specific combination of references before the board invalidates claims. This court has never specifically addressed notice in the context of substitute claims. Again, a situation where it is the patent lawyer... Do you think the patentee shouldn't have any notice? In normal prosecution, they always have notice. There's a rejection, an opportunity for the patentee to respond, then a final rejection. In all of prosecution, there's an opportunity for the patentee to respond to a proposed rejection. Here, they never had any opportunity to address whether these four references taken together ought to invalidate Claim 11, for example. They never had any clue that the board was even considering those four references taken together. Look, you didn't do anything wrong. Just to be clear, you didn't advocate for the board to do this. The board did it. You're stuck here having to defend. You've got a strong case on the underlying merits. Don't worry about that on the first set of claims. But on these amended claims, it just seems to me you've got some procedural problems with what the board has done. I appreciate that you're doing your very best and you're not really defensible in light of our precedent. But if there's anything else you want to say about it, otherwise, I'll let you move on to Claim 1-8 because you've got a much stronger case there if you want to. But certainly, if you want to say anything more about 11-18, feel free. Your Honor, just one other point on the substitute claims, and that is the PTO guidance that was recently issued in connection with what the board will be doing or how the board will be handling motions to amend in light of the Aqua Products case. According to the PTO guidance, the steps that the board took in connection with Substitute Claim 11, apart from the problem of assignment of the burden of proof, but the steps that were undertaken in connection with the IPR appear to be at least consistent with the PTO guidance as to how motions to amend will be treated. Because the guidelines say that no notice need to be provided or consistent with no providing of notice that this court can't find otherwise? It seems to me, and I appreciate the notice issue, but it seems to me that competing with the notice issue ought to be the Patent Office's ability to decide that claims it does not believe are patentable do not need to be issued. I don't think that that's the underlying issue as I understand from what Judge Moore is saying and what I saw in the briefing. But rather, the issue is notice, not that the PTO can't make such decisions, but before they do so, they have to provide notice. I thought that's what notice was about. Your Honor, I appreciate that additional guidance from the court could be helpful in the context of motions to amend and in the context of the patent owner needing to come forward in the first instance to submit the motion and then the petitioner has one opportunity to respond according to the PTO guidelines. After there's briefing on the motion, the Board will consider the entirety of the record, including, for example, if the petitioner files any opposition at all, which is indicative of a procedure to be undertaken that will involve the Board making patentability determinations. I agree that the question of providing appropriate notice to the patent owner in those circumstances is less than clear from the PTO guidance, but nonetheless, if we were to follow the guidance as explained by the PTO, because it has indicated that no additional procedural mechanisms will be in place as to... If that was true, then the logical extension of that would be that the PTO was free to go completely outside the IPR record, conduct what equates to, you and I would understand, to be an examination and do a prior art search, come up with... If we're going to stick purely to those guidelines and say, no, these are the only opportunities for each person to be heard, then I don't think we've ever decided, for example, that the PTO is not permitted to find its own prior art, and I'm not sure it isn't. Now, it has never done that in an IPR to my knowledge, but I don't know that any statute, especially when we're talking about amended claims, prevents the PTO from doing that. But if your view of the guidance is correct, the PTO could actually find a new reference neither of you have ever seen before and then conclude that the amended claim is unpatentable on the basis of it without giving either party an opportunity to address it. Well, I'm not sure it extends that far, so I may have misspoke what the guidance contemplates, but I believe it's a consideration and evaluation of the evidence of record in connection and the record as enlarged by the scope of the motion to amend. So I'm not sure that that precise question... So maybe that would be outside the record evidence because it would be a new... It would be outside the record evidence, but I appreciate the question of adequate notice to the patent owner. And by the way, I know it's adequate notice to the patent owner because clearly they have the property right that's at stake, right? They're the ones where due process has to be taken because they have the property right. But in a situation like this, I don't know why you shouldn't be given an opportunity to be heard as the petitioner as well because you have the burden, right? So if you have the burden of coming forward, it would be odd to say you have the burden of coming forward, but don't get to ever be heard when the PTO combines new references that you never contemplated combining or suggested. Like for example, you got to prove there's a motivation to combine these four references. That's now part of your burden post-Aqua products. You need an opportunity to be heard on this too, not just the patentee. I mean, you may not have the same due process concerns because you don't have a property right at stake, but it seems like it would be odd to have this new claim, amended claim adjudicated when you have the burden in the absence of you ever getting to be heard on it. I appreciate your honors comments. May I just make a quick segue into the cross appeal because that's related or issues related to notice. In the cross appeal, we concede that we would not be seeking reversal or remand if the scope of the record was consistent with the original IPR. But once the scope of the IPR record was enlarged with respect to the amended claims, we submit that the facts found to establish that the amended claims are obvious ought to also be applied with respect to original claims 9 and 10, which are patentably indistinct from the proposed amended claims. Thank you. Thank you, your honor. On the amended claims issue, it's clear that Sirona was not given notice of these issues and more importantly, under the guidance or the ruling in Magnum Oil, motivations to combine are not fungible. You cannot take the alleged motivation to combine of one set of references and simply input it to a different set of references. But Magnum Oil was not an amendment case. It was a straight IPR case. So once we get into an amendment territory, just like you have to be given notice and an opportunity to be heard, if according to Aqua Products, they have the burden of proving motivation to combine and if the PTO is going to look at four references that have never been argued to be combined by somebody else, they have to be given an opportunity to meet their burden. Your honor, that's certainly true, but they had notice. Again, as stated in Aqua Products, the burden is not on the patent owner. Since it is not on the patent owner, the petitioners had the opportunity to raise grounds. They abandoned reliance on both banisher and troop and they presented their own grounds. The board did not agree with those grounds. But these are amended claims. No matter what Magnum Oil says, it pertains to the claims that were already issued that are now back in this IPR. The patentee has a due process, has a property right to, which is why a lot of these due process issues attach. You don't have a property right to amended claims. They were never issued. There have to be different standards that apply to amended claims, which never went through a re-examination process. Certainly, your honor. I agree there is a ... Examination process, I should say. There is a notice issue, but I think the issue is that in this particular case, there was no reason given to combine banisher with Poirier or Klein. You say there's no reason, well, there's no reason because they didn't have a chance to address that combination any more than you did. They did, your honor, simply because banisher was relied upon against the original claims. Mooshabak was relied upon against the original. All of this is predicated on your idea that when amended claims are involved, that the PTO can look at nothing beyond the particular combination of references that they argue in the opposition to amend. Because we're talking about amended claims, which has never been subject to examination, I'm not sure the PTO should be so limited. I don't know that that's in the public's best interest. If I'm willing to allow the PTO to at least go broad enough to pick and choose from among the majority of record and don't involve expanding the record, I guess maybe just address that. It's not a specific question, but you can clearly see where I'm going. Yes, your honor. I think the issue from our point of view is that with respect to, and the reason I cite Magnum Oil is simply because that the idea of reasons to combine aren't fungible. There was no reason to combine banisher and true. The petitioner had the opportunity. It relied on banisher originally. It could have applied banisher. Once we exposed the problems with banisher, they abandoned it and they provided no evidence for any reason to combine. There's a lack of evidence in the record that would support that combination. As far as the notice for the petitioners, the petitioners were aware of banisher, applied banisher, decided to let go of it. Once that was done, there's nothing in the record to support the board's decision. The problem is, again, you're thinking of this as an adversarial proceeding. Once we get into motions to amend, I'm not sure that it's as adversarial as it is hybrid like the Supreme Court said in Quoso, where it's really a quasi-administrative proceeding deciding should this new claim never having been examined by anyone be allowed. That's where when everything you're saying resonates with me when we're talking about the original claims, but ceases to resonate with me quite frankly when we're in the amended claim territory. Well, then I'll close because I see I'm past my time with the idea that I think we would agree that there is a notice problem, that Serona was not given any opportunity to address this combination that was applied, and therefore for that reason alone, the decision was improper. And at that, I'll leave it. Thank you, Your Honor. Thank you. And he didn't address it at the cross-appeal, so there's no argument. Thank you. We thank both sides. The case is submitted.